HARRY WEINSTEIN AND BETTY WEINSTEIN, HIS WIFE, PLAINTIFFS-APPELLANTS, v. CHURNA SHAPIRO, DEFENDANT-APPELLEE.

Submitted October 5, 1943—Decided December 28, 1943.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and COLIE.

For the plaintiffs-appellants, *Abraham R. Klitzman* (*Theodore D. Parsons,* of counsel).

For the defendant-appellee, *Durand, Ivins & Carton* (*J. Victor Carton,* of counsel).

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. The plaintiff, who brought an action for personal injuries resulting from falling in the common hallway of an apartment house, appeals from an adverse judgment. The defendant in the case was the owner of the property. The learned trial court directed the jury to return a verdict in favor of the defendant on the theory that the possession and control of the property in which the accident occurred was at that time lodged in the lessee. The plaintiff's contention on this phase of the case was that the

lease was not a *bona fide* instrument and therefore whether the defendant-owner had relinquished control over the premises, and particularly the common hall and stairway, was a fact issue for the jury. The court declined to accept this view and directed the jury accordingly.

The plaintiff Betty Weinstein called on a tenant in the apartment house, Mrs. Schafman, a dressmaker. She left at about six-thirty in the evening and, as she approached the stairway on the second floor, caught her shoe in some nails that protruded from the floor of a hallway and fell down the stairs.

Taking up the matter which prompted the court to direct a verdict for the defendant, it seems that the defendant, Mrs. Churna Shapiro, record title holder to the premises, took title on April 8th, 1936. The grantors were her parents, Joseph H. and Tilly Friedman. After title passed the Friedmans continued to live on the premises in the sixteen room, one family house, later converted by them into an apartment house for the accommodation of three tenants. The Friedmans retained one apartment and rented the other two. The alteration of the building was undertaken on or about July 10th, 1939, at an estimated cost of $3,500. Shortly prior thereto, that is, on April 15th, 1939, Mrs. Shapiro had entered into a lease with her mother, Mrs. Friedman, whereby she rented the property to her for a period of six years at a rental of $30 a month. The lease, which was not recorded, provided that the tenant was permitted to make alterations "and to sublet two apartments which are to be remodeled at the expense" of the lessee "at any time during the term of this lease * * *." The appellants consider that sufficient emerged from cross-examination of defendant's witnesses to raise a question of fact on the issue of whether the lease was legitimate and effective and whether the owner had relinquished control completely. There is no direct evidence that the lease was other than a normal business arrangement between the parties.

The witness, Mrs. Schafman, by deposition, testified that she had lived in the premises for two years; that she was a dressmaker and that she thought the lessee, Mrs. Friedman,

owned the property; that the lessee had collected the rents and had complete charge of the house, including the hallways and stairs. The defendant, Mrs. Shapiro, testified to having acquired title to the property in 1936, by deed from her father and mother; that the lease was executed in 1939; that she gave her mother the right to convert the dwelling into a three family apartment house; that the changes were made at her mother's expense and that since the inception of the lease she exercised no supervision or maintenance over the premises whatsoever. On cross-examination she said that she paid a small sum for the deed; that she didn't remember the exact amount but that it was paid in cash; that her mother remained in the premises as a tenant and it was not until three years later that she entered into the written lease; that she paid the taxes by giving her mother the amount in cash, explaining that she lived in Lakewood and it was not convenient for her to come to Belmar, where the tax office was located. The same arrangement prevailed for the payment of water bills and insurance; that she never made any repairs to the house; that the lease was prepared by her brother, Isidore J. Friedman, a member of the bar of this state. She reiterated her statement that she didn't remember the amount of the consideration paid for the deed; that from 1936 until 1939, before the house was converted to its present condition, there had been no lease between her mother and herself. To a question as to whether her mother was taking care of the house for her, she replied in the affirmative and on re-direct examination explained that the lessee, her mother, was "running it [the house] for herself."

The witness, Ernest Boetticher, a building contractor, said that he did the work of renovating the house in 1939; that he was employed by the lessee and had no negotiations whatever with the owner.

The lessee, Mrs. Friedman, testified that she had operated the house since 1939; that it was converted to its present state in that year and that she had made the changes. Regarding the consideration for the deed in 1936, she testified that she was indebted to her daughter in the sum of $500 and that she conveyed the property to her daughter in order "to

show her security," as she put it; that her son arranged to get the building permit and that he signed the name of the owner, Churna Shapiro, his sister, to the application; that she wanted a lease between herself and her daughter because, as she stated, she was "going to make this big investment" of remodeling the house "and I wanted to have the lease."

Out of all this it is argued by the appellants that the true relationship between the parties was not that of landlord and tenant and that their real status and relative positions made a fact question which should have been determined by the jury. We think the testimony of the witnesses to which we have referred and the other evidence is insufficient to bring the contract between the parties into the realm of fact and that the cases in our state upon which the appellants seem to rely—*Tischler* v. *Steinholtz*, 99 *N. J. L.* 149; *Glaser* v. *B. V. D. Sales Corp.*, 112 *Id.* 179, and *Spelde* v. *Galtieri*, 102 *Id.* 203—are not applicable. Whatever duty was owed to the plaintiff at the time of her unfortunate mishap was a legal obligation of the person who had possession of and control over that part of the premises where the plaintiff's cause of action arose. The unimpeached evidence placed that duty on the lessee. *McNamara* v. *Mechanics Trust Co.*, 106 *Id.* 532.

As we view the facts, we find nothing that impugns the legitimacy of the lease arrangement between the owner and the tenant. The action of the trial court in directing a verdict for the defendant was proper under the circumstances.

The judgment should be affirmed, with costs.